Return To:

Coldwell Banker Mortgage
2001 Bishops Gate Blvd.
Mount Laurel, NJ 08054

Prepared By:

Sheri Fulton, Coldwell
Banker Mortgage
3000 Leadenhall Road Mount
Laurel, NJ 08054

Joyce B. Sawyer, Register
Montgomery County Tennessee
Rec #: 126444
Rec'd: 95.00    Instrument #: 706546
State: 151.69        Recorded
Clerk: 1.00    7/12/2006 at 11:10 AM
EOF: 2.00         in Volume
Total: 249.69         1111
        Pgs 983-1001

Volume
1111 Pg 983

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $ *133,900.00*

————————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST
## MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 10, 2006
together with all Riders to this document.
(B) "Borrower" is Maurice D Hite, AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Coldwell Banker Mortgage

Lender is a Corporation
organized and existing under the laws of New Jersey

TENNESSEE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3043 1/01

-6A(TN) (0005)

Page 1 of 15        Initials: *m.H.*

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **3000 Leadenhall Road Mount Laurel. NJ 08054**

(D) "Trustee" is **LARRY N. WESTBROOK. ESQ**

a resident of **NASHVILLE**
, Tennessee.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-20216, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **July 10, 2006**
The Note states that Borrower owes Lender **One Hundred Thirty-Three Thousand Nine Hundred Dollars and Zero Cents**
Dollars

(U.S. **$133,900.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1st, 2036**      . The maximum principal indebtedness for Tennessee recording tax purposes is $

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(TN) (0005)        Page 2 of 15        Initials _m.H._        Form 3043   1/01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **COUNTY** | of | **MONTGOMERY** |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

*See Exhibit "A" Attached & Incorporated Herein By Reference.*

Derivation Clause

This instrument constituting the source of the Borrower's interest in the foregoing described property was a _____ recorded _____
in the Register's Office of **MONTGOMERY**
County, Tennessee.

Parcel ID Number: _____
which currently has the address of

**2783 RIDGEPOLE DRIVE**
**CLARKSVILLE**
("Property Address"):

[Street]
[City] , Tennessee **37040** (Zip Code)

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(TN) (0005)

Page 3 of 15

Initials: *m. H.*

Form 3043   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____        *Maurice D. Hite*_____ (Seal)
                                          **Maurice D Hite**                -Borrower

                                          _____ (Seal)
                                                                           -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                          -Borrower

VMP-6A(TN) (0005)                  Page 14 of 15                  Form 3043   1/01

STATE OF TENNESSEE, MONTGOMERY                    County ss:

On this 10th              day of July, 2006                    , before me personally appeared
Maurice D Hite

to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be his/her/their free act and deed. Witness my hand and official seal.

My Commission Expires:

_1 27 07_



Notary Public

PATRICIA K. POTTS
NOTARY
PUBLIC
AT
LARGE
MONTGOMERY CO. TENN.

6A(TN) (0005) 02                    Page 15 of 15          Initials: M. H.                    Form 3043   1/01

Exhibit "A"

Being Lot No.164, on the plan of Glen Ellen Landing, Section 2, as shown by Plat E, Page 1119, in the Register's Office for Montgomery County, Tennessee, to which said plat is made a part hereof and incorporated herein by reference.

This property is subject to building setback lines, utility and drainage easements and all other matters as shown on the aforementioned plat of record. Storm Water Maintenance Agreement of record in ORBV 1073, Page 2672, in the Register's Office for Montgomery County, Tennessee.

This being the same property conveyed to Grantor by deed of record in Official Record Book Volume 1111, Page 981, in the Register's Office for Montgomery County, Tennessee.

This property is identified as Tax Parcel #'s 32I-B-33 in the Montgomery County Tax Assessor's Office.

M.H.

# NOTE

July 10, 2006                                    CLARKSVILLE                                    Tennessee
[Date]                                              [City]                                        [State]

## 2783 RIDGEPOLE DRIVE, CLARKSVILLE, TN 37040

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 133,900.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Coldwell Banker Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      8.584 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 01st      day of each month beginning on September 1st, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1st, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3000 Leadenhall Road Mount Laurel, NJ 08054
                                                                    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1037.56

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials M.H.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N (0207) 01

Page 2 of 3

Form 3200 1/01
Initials m.h.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Maurice D. Hite_ _____ (Seal)  
**Maurice D Hite** -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

*[Sign Original Only]*

-5N (0207) 01                          Page 3 of 3                          Form 3200 1/01

## LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE

THIS LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE is made this 10th day of July, 2006, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of Coldwell Banker Mortgage ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the 10th day of July, 2006 (the "Security Instrument"). (As in the Note, Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder.")

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Note Holder further covenant and agree as follows:

### 1. LOW DOWN PAYMENT MORTGAGE RATE REDUCTION

Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. Note Holder agrees to decrease the Note Rate by 0.625 percentage point(s) on the earlier of (a) the First Cancellation Date or the Second Cancellation Date, provided that the conditions described in 1.A. or 1.B. below, as applicable, are satisfied; or (b) the Termination Date, provided that Borrower's monthly payments are current at that time.

#### A. First Cancellation Date

The "First Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance: (a) is first scheduled to reach 80% of the original property value; or (b) actually reaches 80% of the original property value; (3) Borrower has demonstrated a Good Payment History (as described below); and (4) the then-current value of the property is at least equal to the original property value. (For purposes of calculating original property value hereunder, Borrower's loan-to-value ratio at origination is 89.93 %. In addition, the then-current property value will be based on a new appraisal or broker's price opinion obtained by Note Holder and paid for by Borrower.)

For purposes of the First Cancellation Date, Borrower will have demonstrated a Good Payment History if Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior to the First Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the First Cancellation Date. If Borrower has had the mortgage loan for less than twenty-four (24) months, this payment history requirement will be based on the length of time Borrower has had the mortgage loan.

#### B. Second Cancellation Date

The "Second Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance must be paid down to a point that it,: (a) if within 2 to 5 years of the date of this document, reaches 75% of the current property value, or (b) if after 5 years of the date of this document, reaches 80% of the current property value (current

MULTISTATE LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE

property value to be based on a new appraisal obtained by Note Holder and paid for by Borrower); and (3) the loan must have at least a twenty-four (24) month history.

For purposes of the Second Cancellation Date, the Borrower will have demonstrated a Good Payment History if the Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior to the Second Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the Second Cancellation Date.

**C. Termination Date**

The "Termination Date" is defined as the earlier of: (1) the date that the mortgage balance is first scheduled to reach 78% of the original value of the property; or (2) the first day of the month after the date that is the mid-point of the original mortgage amortization period.

For purposes of the Termination Date, the Borrower's monthly payments will be deemed to be current if the payment due in the month before the Termination Date, all prior monthly payments, and any outstanding late charges have been paid by the end of the month before the Termination Date. If the Borrower's monthly payments are not current on the Termination Date, the rate will be reduced thereafter on the first payment due date following the date on which Borrower's monthly payments become current.

**D. New Payment Amount**

If and when the Note Rate is reduced as described above, Note Holder will advise Borrower (1) of the amount of the new monthly payment that would be sufficient to repay the unpaid principal Borrower will owe on the date the Note Rate is reduced, in full on the maturity date at Borrower's new Note Rate in substantially equal payments (the result of the calculation will be Borrower's "New Payment Amount"); and (2) the date on which the New Payment Amount is to commence, which shall be the next payment due date after the First Cancellation Date, the Second Cancellation Date, or the Termination Date, as applicable.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Low Down Payment Mortgage Addendum to Note.

_Maurice D. Hite_ _____ (Seal)
Maurice D Hite                                    -Borrower

_____ (Seal)
                                                  -Borrower

MULTISTATE LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE

0641415 (0006)                          Page 2 of 2

Allonge to Note

Loan Number:

Borrower: MAURICE D HITE

Property Address:

2783 Ridgepole Dr
CLARKSVILLE TN 37040

Loan Amount: 133900
Closing Date: 07/10/2006

Without Recourse
Pay to the order of: *

Rita Calendo
Assistant Vice President
PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage
Prepared by: Calendr